# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CORTNEY BRYANT-EL, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. CCB-18-1519 |
| DAYENA CORCORAN, et. al., | * | |
| Defendants | * | |
| | *** | |

## MEMORANDUM OPINION

Cortney Bryant-El is incarcerated at North Branch Correctional Institution (NBCI) in Cumberland, Maryland. On May 24, 2018, he filed this lawsuit pursuant to 42 U.S.C. § 1983, alleging that state defendants and medical contractor employees violated his rights under the Eighth and Fourteenth Amendments. On August 20, 2018, Defendants Tammy Buser, L.P.N., Ryan Browning, R.N., Dawn Hawk, R.N., and Stacie Mast, R.N. (collectively, the Medical Defendants) filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, ECF 10, to which Cortney-El filed an opposition accompanied by his affidavit, ECF 17; ECF 17-1.

On December 14, 2018, Commissioner of Correction Dayena Corcoran, Lieutenant Walter Iser, Sergeant William Thomas, C.O. II Brian Fann, C.O. II Bobby J. Ziler, C.O. II Douglas E. Frazee, C.O. II David J. Donaldson, Sr., C.O. II David C. Robey, and C.O. II Charles L. Barb, (collectively, the State Defendants) filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF 24. On January 9, 2019, Bryant-El filed a Motion to Extend the Time to File a Reply to the State Defendants' Motion until February 2, 2019, ECF 29, which the court granted, ECF 30.

Bryant-El's claims against the Medical Defendants are ripe for disposition and will be considered here. His claims against the State Defendants will be considered after they become ripe for adjudication.

## BACKGROUND

On January 26, 2016, Bryant-El, then incarcerated at Western Correctional Institution (WCI), was involved in an incident during which WCI officers administered pepper spray. ECF 1 at p. 5. Bryant-El claims that Defendants Browning and Hawk improperly examined and treated him for pepper spray exposure on January 26, 2017. He states that Defendants Buser and Mast falsely reported that he had refused to attend sick call visits.[1] ECF 1 at p. 26. He further claims Browning, Hawk, and Buser retaliated against him for his actions against correctional officers stemming from the January 26, 2017, incident. ECF 1 at pp. 12, 13, 18. As relief, Bryant-El is seeking punitive and compensatory damages.

## STANDARD OF REVIEW

In reviewing a Rule 12(b)(6) motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (internal quotations marks and citations omitted). Where, as here, the plaintiff is self-represented, pro se pleadings are "to be liberally construed" and are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S.

---

[1] In his opposition, Bryant-El also claims Krista Bilak failed to investigate whether he refused medical care. ECF 17 at ¶3. Bryant-El did not name Bilak as a defendant and he may not add a new defendant or a new claim in his opposition. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314 (11th Cir. 2004) (emphasizing that the "liberal pleading standard" of Rule 8 "does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage"); *see also Myland Labs., Inc. v Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) (stating "it is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss" (internal citation and quotation marks omitted)); *see also Zachair Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (stating that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint") (internal citations omitted), *aff'd*, 141 F.3d 1162 (4th Cir. 1998).

2

89, 94 (2007) (internal citations and quotation marks omitted). However, even a pro se litigant's complaint must be dismissed if it does not allege a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal citation omitted).

The Supreme Court of the United States explained a "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* (internal citation omitted). Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563 (internal citation omitted). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, at 678 (quoting *Twombly*, 550 U.S. at 556). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563 (internal citation omitted).

Summary Judgment is granted if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)) (further internal citations omitted). The court should "view the evidence in the light most favorable to ... the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002) (internal citation omitted). The court, however, also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993) and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)) (internal quotation marks omitted). Against this standard, the court recognizes that pleadings filed by pro se litigants may proceed to allow them to fully develop potentially meritorious cases. *See Erickson*, 551 U.S. at 94. A court, however, cannot assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

## DISCUSSION

The Medical Defendants argue Bryant-El fails to state a claim against Buser and Mast. Further, the Medical Defendants assert that they are entitled to summary judgment because the verified medical records show they were not deliberately indifferent to Bryant-El's serious medical needs.

In order to state an Eighth Amendment claim of cruel and unusual punishment due to denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to

act, amounted to deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (citing *Estelle*, 429 U.S. at 104). Deliberate indifference requires proof that a prison official was aware of a substantial risk of serious harm to an inmate's health or safety and disregarded the risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

> Deliberate indifference is a very high standard—a showing of mere negligence will not meet it . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences . . . To lower this threshold would thrust federal courts into the daily practices of local police departments.

*Grayson v. Peed*, 195 F.3d 692, 695–96 (4th Cir. 1999) (internal citations and quotation marks omitted). In a case involving a claim of deliberate indifference to a serious medical need, the inmate must show a "significant injury." *Danser v. Stansberry*, 772 F.3d 340, 346, n.8 (4th Cir. 2014).

To establish a retaliation claim against prison officials, an inmate must show "that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone." *Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)) (internal quotation marks omitted); *see also Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (conclusory allegations of retaliation are insufficient to state claim), *judgment vacated on other grounds*, 525 U.S. 802 (1998).

> Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights. *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). Where there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for

retaliation. Thus, a showing of adversity is essential to any retaliation claim.

*ACLU of Md., Inc. v. Wicomico Cty, Md.*, 999 F.2d 780, 785 (4th Cir. 1993). A "plaintiff bears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison officials' decision[.]" *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (internal citation omitted).

### Allegations against Ryan Browning, L.P.N.

After he was exposed to pepper spray on January 26, 2017, Bryant-El was escorted to the WCI infirmary at approximately 2:21 pm. Compl. ECF 1 at pp. 10–11; Medical Report ECF 17-2 at pp. 5–6. Bryant-El alleges that he told Browning, "[m]y body is burning, my eyes hurt badly, and I'm having a hard time breathing." Compl. ECF 1 at p. 11. Bryant-El avers that he was "literally unable to see, while laboring for every breath." Compl. ECF 1 at p. 11. Browning allegedly responded, "you have too much of that mace on you for me to do anything for you." Compl. ECF 1 at p. 11. Bryant-El claims Browning was deliberately indifferent to his serious medical needs by ignoring his reported symptoms. Further, even though Bryant-El told Browning that he suffers from asthma, Browning failed to direct correctional staff to give him his asthma inhaler. Compl. ECF 1 at p. 11; Affidavit of Courtney Bryant-El, ECF 17-3 ¶ 5. This, Bryant-El alleges, violated Department of Public Safety and Correctional Services (DPSCS) protocol and policy for treating chronic diseases such as asthma. Bryant-El claims that Browning, by his demeanor and words, exhibited hostility toward him and wanted him suffer "due to the conflict [he] had earlier on that date with correctional staff at WCI." Bryant-El Aff. ECF 17-3 ¶ 9; *see also* Compl. ECF 1 at p. 12.

Bryant-El disputes the veracity of Browning's medical report written contemporaneously to the physical exam. Compl. ECF 1 at p. 12; Bryant-El Aff. ECF 17-3 ¶ 6; Plf. Medical Report

ECF 17-2 at pp. 5–6. The medical report, dated 2:24 p.m., January 26, 2017, states Bryant-El voiced no medical complaints, stating "im [sic] good." ECF No. 17-2 at pp. 56. The report continues that Bryant-El's skin was "warm and dry," his respiration was "even and nonlabored," and no symptoms of distress were noted. ECF No. 17-2 at p. 5. Further, the medical record indicates that Bryant-El denied pain, difficulty breathing, vision problems, or other injury. ECF 17-2 at p. 5.

Browning denies falsifying any information in the January 26, 2017 medical note. Affidavit of Ryan Browning, ECF 10-4 ¶ 5. Browning attests "the description of Bryant-El's condition during that clinic visit is accurate, based upon my observations of and discussion" with him and training as a licensed practical nurse. Browning Aff. ECF 10-4 ¶ 5. Browning states that he complied with standard nursing procedures for treating WCI inmates and no aspect of the care provided to Bryant-El was motivated by retribution or other malicious intent. Browning Decl. ECF 10-4 ¶ 6.

Clearly, Browning and Bryant-El offer differing versions of his medical condition and medical needs in their affidavits. These differences pose genuine issues of material fact regarding whether Browning refused necessary treatment for Bryant-El after exposure to pepper spray, and if the purported refusal was the result of wrongful retaliatory animus. Determinations of credibility are generally inappropriate for judgment on the pleadings. Accordingly, the Medical Defendants' Motion will be denied as to Browning.

### Allegations against Dawn Hawk, R.N.

On January 26, 2017, following the use of force incident, Bryant-El was moved from WCI to NBCI. At approximately 4:34 p.m. the same day, Hawk examined him for complaints from the use of force incident. ECF 1 at p. 13; Def Ex. 1 ECF 10-2 at p. 5. Bryant-El alleges that he

7

informed Hawk that he could not breathe and was having an asthmatic attack, his skin was burning, and his eyes hurt, but she provided no treatment for his symptoms and only checked his blood pressure. Compl. ECF 1 at p. 13. Hawk allegedly informed him, "[o]fficers protect us and we look out for them." Compl. ECF 1 at p. 13. Bryant-El asserts that Hawk acted with deliberate indifference to his serious medical condition in retaliation for the incident with corrections officers earlier that day. Compl. ECF 1 at p. 13; Bryant-El Aff. ECF 17-3 ¶ 4, 9.

Bryant-El disputes Hawk's medical findings that his breathing was even and unlabored. Bryant-El Aff. ECF 17-3 ¶ 7. The medical record indicates that Bryant-El voiced no medical complaints and Hawk observed no injuries. ECF 10-2 at pp. 3–5.[2] Hawk indicates the report accurately reflects the results of the physical examination. Affidavit of Dawn Hawk, ECF 10-4 at p. 4, ¶¶ 3, 5. Hawk denies that she refused Bryant-El necessary medical care. ECF 10-4 at p. 4, ¶ 5. Hawk attests that she complied with standard nursing procedures at NBCI for treatment of inmates. She states, "no aspect of my care was motivated by retaliation against Mr. Bryant-El for the alleged assault on correctional officers or by any other malicious intent." ECF 10-4 at p. 5, ¶ 6.

Hawk and Bryant-El's differing accounts of his medical condition in their affidavits pose genuine issues of material fact regarding whether Hawk provided necessary treatment for Bryant-El, and if the purported inadequate treatment was the result of wrongful retaliatory animus. Because these are credibility determinations inappropriate for judgment on the pleadings, the Medical Defendants' Motion will be denied as to Hawk.

---

[2] The record is unclear as to why Bryant-El was brought for medical attention a second time on January 26, 2017, if he voiced no medical complaints.

**Allegations against Tammy Buser, R.N.**

Bryant-El claims that he was not escorted to his February 21, 2017, appointment at the Chronic Care Clinic. Bryant-El alleges that the correctional officer who failed to escort him to the medical appointment "told medical that [Bryant-El] refused to come to the clinic" ECF 1 at p. 15. Bryant-El acknowledges that "Buser was very possibly deceived" by the correctional officer about the February 22, 2017 sick call slip. Compl. ECF 1 at p. 17. Bryant-El faults Buser for recording him as a "no show" without investigation. Compl. ECF 1 at p. 17. Bryant-El also faults Buser for failing to investigate why he did not attend his medical appointments before she recorded him as a "no show" on February 21, 2017 and May 27, 2017. Compl. ECF 1 at pp. 15, 17. Additionally, he faults Buser for typing his name on a Release of Responsibility form ("ROR") on May 27, 2017 alleging this amounted to a failure to implement proper procedure. Compl. ECF 1 at 17; Reply ECF 17 ¶ 3. Bryant-El claims Buser willfully disregarded protocols for recording refusal of care to "facilitate[] the efforts of vengeful correctional staff" who wanted to interfere with his medical care. Compl. ECF 1 at p. 18.[3]

To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (internal citations omitted). Assuming Bryant-El's allegations against Buser to be true, he identifies no federal law or constitutional provision that obliges a medical provider to investigate an inmate's failure to appear for a medical appointment. Bryant-El's conclusory assertion that Buser's actions or omissions failed to comply with DPSCS policy do not support to a claim of constitutional moment. A prison official's failure to follow internal prison policies is not

---

[3] Bryant-El's affidavit does not address his claims against Buser or Mast. ECF 17-3.

actionable under 42 U.S.C. §1983 unless the alleged breach of the policy rises to a constitutional violation. *See Jackson v. Sampson*, 536 Fed. App'x 356, 357–58 (4th Cir. 2013) (citing *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997));[4] *see also Myers v. Klevenhager*, 97 F.3d 91, 94 (5th Cir. 1996). Further, Bryant-El's unsubstantiated and conclusory assertions about completion of the ROR form do not support a retaliation claim. Accordingly, the claims against Buser will be dismissed with prejudice.

### Allegations against Stacie Mast, R.N.

Bryant-El alleges Mast showed deliberate indifference to his serious medical need by disregarding proper medical procedures and failing to "look into the matter further" when he did not attend a scheduled medical appointment. Compl. ECF 1 at p. 19. He also faults Mast for preparing and submitting a ROR form dated September 13, 2017, that neither he nor any witnesses signed. Compl. ECF 1 at p. 19.[5] Bryant-El identifies no federal law or constitutional provision that required Mast to investigate his failure to appear for a medical visit. His conclusory assertion that Mast's failure to inquire about his "no show" violated DPSCS policy does not establish deliberate indifference to support a constitutional claim. Accordingly, for the reasons stated in relation to the claim against Buser, the claims against Mast will also be dismissed with prejudice.

### CONCLUSION

For these reasons, the court shall by separate order, grant in part and deny in part the Medical Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. Specifically, the court shall dismiss the claims against Buser and Mast, and deny the motion for summary judgment as to Browning and Hawk. The court shall defer issuing a scheduling order until the claims against the State Defendants are considered.

---

[4] Unpublished opinions are cited for the soundness of their reasoning, not for precedential value.
[5] Bryant-El does not claim Mast acted with unlawful retaliatory motive.

1/30/19
Date

/s/
Catherine C. Blake
United States District Judge